On first examining this case some complexity in the circumstances, and the great ingenuity of counsel which took a wide range in argument, produced some degree of doubt. But on a careful attention to the facts and real merits of the case, the doubt has vanished. The first great question is, did Capt. Campbell purchase the negroes from the executors of Williamson, as the agent or trustee of Mrs. Fraser, and hold them for her and *400 transfer them to her in that character ? Or did he purchase them on his own account, and afterwards sell them to Mrs. Fraser, so as to enable her to set up her long pos-^ssion as adverse to the mortgage ? The complainant herself has in a great measure decided this question. In her bill she charges that the trustees in her marriage settlement (which however has never been produced) determined to purchase negroes with the monies arising from the sale of her bonds, and accordingly requested her near friend and connection, Captain Campbell, to receive all the money and bonds due to her from her father’s estate, and to purchase thei’ewith negroes for the benefit of herself and children. And that Capt. Campbell did accordingly make several purchases of ne-groes on her account. And in 1790, he being then in possession of a bond or bonds due to her (being part of the trust estate) made a purchase of sundry negroes from the estate of A. Williamson, on account of Mrs. Fraser, and gave his own bond with J. Clitherall as security, payable in one and two years, together with a mortgage of said negroes, to the executors of Williamson, from whom he took a bill of sale in his own name ; on w'hich bill of sale Captain Campbell made a written endorsement, declaring that the negroes included therein were purchased by him for Mrs. Fraser, and a bond of Mr. Inglis was assigned to him for the payment of them.
The bill further alleges that Captain Campbell after-wards accounted for the trust funds in his hands, and after charging all the purchases made by him, acknowledged himself a debtor to Mrs. Fraser in 5361. and delivered the negroes and particularly those purchased from Williamson, with the bill of sale and memorandum of the trust endorsed to the complainants who have remained in possession of them ever since. This then is the complainant’s own statement of the case, and this statement speaks of the purchase of the negroes in question, as made in trust for her, and so declared by Mr. Campbell, and so accepted by her, and the nc- *401 groes held by her raider that purchase. There can he no question then but that the negroes were hers from the time of the purchase, and that Campbell held them me rely as trustee ; and there can be no question had Captain Campbell instead of declaring the trust as he did, endeavored to convert the purchase into one for himself, he could and would have been compelled by this Court to acknowledge the trust; and Mrs. Fraser would have held them clear of his debts contracted on his own private account, whatever judgments and executions there may have been against him. See case of Benton and M’Kinsze, and Methodist Cln v» Brazier, if the case rested here I presume there would be an end of the question of adverse, possession. It would be obvious that the possession arose out of the purchase and was consistent with the mortgage; But it is allege ed that Captain Campbell had instructions to make the purchases of negroes for»Mrs. Fraser, with the bonds of the trust estate, and that he violated his instructions by giving bis bond and a mortgage of the negroes to the seller. That this violation of duty has been mischievous to Mrs. Fraser, as Captain Campbell has received the money on Mr. Inglis’s bond, without appropriating it to the payment of the purchase of the negroes ; and now a considerable balance remains due, on which account the negroes have been seized under the mortgage ; and that he being now insolvent, the loss ought to fall on the holder of the bond and mortgage given by Capt. Campbell, who looked to him alone, and not to Mrs. Fraser.
The counsel for the defendant very properly remarked on this part of the case, that it was necessary to distinguish between the allegata and the probata of the complainants, and they denied that there was any proof of any such instructions as to the mode of paying for the purchased negroes. And it is certainly true that there is no proof on that point, except what is contained in the accounts and papers of Captain Campbell, and these do not go so far as is alleged $ for though the complainants have sworn to the hill containing the allegations, *402 ^ 1S We^ ^nown this is not received as evidence on ^‘e hearing. It was proper in orde'r to enable the party obtain an injunction, but no further. Stripped of feature for want of evidence the case would stand thus : An agent is employed to 'purchase negroes for a and does so¿ and gives a bond and mortgage, and takes a bill of Sale in his own name, but declares the trust on the bill of sale and afterwards to the seller. All are satisfied and no complaint is made of any violation of the instructions, till it is said many years after-wards that the agent has not applied the funds which were placed in his hands to the payment of the debt. Under such circumstances I cannot doubt that the original lien remains with the seller, and that the principal must look to the defaulting agent for an account of his funds. But let us look a little further into the circumstances of the case; The tnistees are said to have instructed Captain Campbell to make the purchases, and placed the bonds in his hands to make them* without any view of his giving bond and mortgage. Now we see one of those trustees, the acting one Dr. Clitherall, concurring in this very purchase, and in the mode of settling for it by bond and mortgage. He joins in the hondas security and in the mortgage as a principal. He knows and approves of all that is done, and is satisfied with the declaration of trust, and on the return of Mrs. Fraser she accepts of the negroes under the purchase, made in trust for her. It appears to me this is conclusive, for the trustee who planned these operations best knew if the execution of the plan conformed to his 'directions. He has said yes, by his conduct. I cannot no. Besides if he had a right to give the original ñcstractions, lie had a right to vary them, and his conduct shows that he did so, or approved of the alteration, the purchaso was made wholly under his eye and he a party. Another objection was made founded on an alleged misapplication of the funds by Capt. Campbell. accounts of Mr. C. were oifered by complainants evidence, which after some opposition and some scru- *403 pies I admitted. Let us see what it proves and how far it agrees with the allegation that Captain Campbell re-oeived all the funds placed in his hands, and particularly the money on Inglis’s bond, and did not account them, or apply them to the payment of the purchase of negroes. The first paper relates to Inglis’s bond ; shews the payments made on them to Captain Campbell,. & the application of them till thelast sum of 5411.18s. 4.d, Then follow these words: « Then received in. full, credited on purchase of negroes as is every other payment.”There we have a decisive declaration of Mr- Campbell, introduced by the complainant' herself, that he. has received the whole of Inglis’s bond and applied them to. the payment of the purchases of- the negroes. He does, not say indeed on this particular, purchase, but he had made several purchases as the bill alleges, and it .is unimportant on which this money was credited. He says expressly, he has received all the trust funds and paid them away on the purchase of negroes for her use. The next paper signed by Captain Campbell, and introduced by complainant, is an account between Mrs. A. L. Fraser and Captain Campbell, in which the first item of debit to Mrs. Fraser being 1761. 9s. 9d. is the balance due by her to him op the different purchases of the negroes. On the back of this second paper are these remarkable words : «I must however acknowledge that the debit of 1761. 9s. 9d. in the within account was all that was due to me, after giving credit for the bonds I received from the exors. of the estate of Thomas ■L. Smith and debiting you with all the purchases of ne-groes on account of your family. This seems to me to be conclusive on the complainants in this cause; for though it might not be so in any controversy between Mrs. A. Fraser and Captain Campbell ; yet here the papers shewing this result are introduced and' made evidence by herself and are imcontradicted by any evidence } and he expressly charges Mrs. Fraser with 1761. 9d. 9s. as a balance due to him after giving credit for the bonds he received from the executors of T. L? *404 Smith and- debiting her with all the purchases of ne-Sr0GS made on account of hex3 family. What can shake this ? Can Mrs. Fraser be at liberty to shew that this *ier own ev^ence is ei’roneous, and that Captain Campbell had not applied as he stated, all the trust funds to ^ie paymer,t 0f the several purchases of negroes 1 l think she would not be at liberty to do so. But if she were has it been done ? I think not. For the third account is with Major Fraser, and includes a great va-xiety of other matters of account. Indeed there is nothing about the trust bonds in the third paper of account, and the supposed balance of 1166?. 18s. 4d. on January 1, 180 L, stated in that paper is instantly diminished by counter charges, and the account is manifestly left open. So that it l’eally does not appear that there was any or any ascertained balance due by Captain Campbell. ,'.i Januax’y 1,1801. But this is of no importance. Tea two former papers shewed that Captain Campbell hai applied and accounted for the fund arising from Ingiis’s bond, partly to the purchase in this particular case, (599í. 12s.) and wholly to other purchases of negroes as he expx’essly alleges on the face of the account. So that the trust estate has had the full benefit of all this fund. The subsequent charges in the accounts are fox* other things, for hire of the negroes and money matters of a joint concern between Mr, Campbell and Maj. Fraser. But let us take for granted for the sake of argument, that Captain Campbell had received all the trust funds, and had not applied them to the payment of the pux’chase of the negroes. The question would then arise who should be the sufferer ? The friend who confided in him and employed him as an agexxt or the stranger who ignorant of the instructions said to have been given, had dealt with Captain Campbell, and sold him valuable property at a fair pi’ice, and took his bond and a mortgage of the propei’ty sold. Common sense and the rules of law and of equity all concur in saying that the former and not the latter ought to he the sufferer, if apy suffering must take place. It js 'insisted *405 however that as the seller looked to Captain Campbell alone, he ought to be obliged to resort to him. But surely this is not the state of the case. The very contract shews that the seller, though he did look to Campbell, did not look to him alone. He looked to the solid security of the property sold. He held fast , very corpus, the thing on which the contract was founded. He had a right to do so, and he does so now. It was immaterial to him in what right Captain Campbell bought, beheld his mortgage.. But he was infonned he bought as agent for Mrs. Fraser.
A great deal of learning was introduced, unnecessarily I think, to shew what the law is on contracts, where the agent transcends his powers and attempts to bind his principal beyond his instructions. If the negroes mortgaged had died, and Captain Campbell had failed, and the executors of Williamson or their assignee had attempted to make Mrs. Fraser or rather her separate estate liable to pay this debt, then there m ight have been room for this question, whether the agent had exceeded or acted in pursuance of his powers. But no such attempt is made ; no suit is brought against Mrs. Fraser, and I do not perceive how that question can arise, where the seller is enforcing his mortgage of the very property sold. It would be monstrous that á party selling to an agent should be liable to be stripped of the very property sold, by the pretence that the agent bad power to purchase, but instructions not to mortgage the property, and those instructions secret at the time as to the seller. No man would be safe on such terms, and it cannot be the law of the land. Indeed the harshness of such a doctrine is too quickly felt to be insisted upon directly. It is attempted to be used indirectly, by putting it in this way : As Captain Campbell violated hft instructions, this purchase cannot be considered as made en account of Mrs. Fraser but for himself. And he afterwards sold to Mrs. Fraser and she has held the property many years, adversely to the seller ; and is now entitled to the benefit of the statute of limitations. *406 Every fact in the case, however, discloses a different state of things. The bill itself, it must be repeated, alleges that he bought the negroes as her agent. He states fact on the back of the bill of sale. He holds them and takes receipt from the seller as her agent. He ac-counj.g jier as ]ier agent for the product of their labor. She accepts the account, receives the negroes, not as a new purchase made from him, but as a part of her separate or trust estate, antecedently purchased for her. She then concurs in and approves of what her agent had done, as her trustee had previously approved and concurred, and she holds the negroes under that purchase, and subject to all its conditions. One of those subjected them to a mortgage to which they remain liable in her hands. Her possession then has never been adverse. B ut it is alleged that she was ignorant of the fact of the mortgage, and did not suppose them mortgaged, but believed them paid for. But there is really no proof of such ignorance, for her trustee knew the fact of the mortgage as well as the agent, and had joined in it, and the law will presume a communication to her. The knowledge of the agent or trustee is notice to the principal. Nor is this altered by the fact that the complainant has sworn to her bill, in which her ignorance is stated, for whatever respect the Court feels for the lady who is complainant, it is not at liberty to receive that statement as evidence on the hearing. A complainant as has been stated, is required to swear to the truth of a biffin order to entitle himself to an injunction. But that oath and the facts alleged under its sanction, are laid aside on the trial and other testimony must make out the cause. But suppose it were conceded that Mrs. Fraser was ignorant of the mortgage-having been given, the mortgage was on record, which she could have learned by enquiry several years before rifoy settlement made with Captain Campbell. It would not only have put her on the enquiry as to the true state of her interests, but would have answered the enquiry by .showing the lien on the negroes. It was said if Mrs. *407 Fraser had enquired and found the mortgage, it would have misled her, as it would have shewn that the seller looked to Mr. Campbell alone, and not to Mrs. Fraser. But this is not correct, for the mortgage would shewn that the seller looked to the lien on the negroes, as the real security of the debt. Besides I must repeat that it does not appear that any notice was necessary to have enabled Mrs. Fraser to have saved herself by retaining from Captain Campbell. It appears by his express declaration in his accounts that he had settled and accounted for all the sums received by him on account of the trust estate. More could not have been done with the fullest notice $ and any general balance of account independent of the particular fund is of no importance in this case. It ought not to be admitted that there was no proof that the seller ever had the least notice of any instructions as to the mode of purchasing and the restriction alleged to have been imposed upon the agent in the purchase. How that restriction if proved could affect the seller, without full and explicit notice, is inconceivable. It would place contracts on the most dangerous footing. A seller has a right to presume that the agent of the buyer has the ordinary powers necessary to complete the contract, and a mortgage is a usual concomitant. Another ground was taken and it was insisted that if a sale of the negroes had been made for valuable consideration to a third person and such person had held possession so long as Mrs. Fraser has had them, it would have been an adverse possession, which according to the decided cases of Cliollat and Hart, decided in Charleston, 1798, and Duncan M’Cra v. Isaac Smith, decided at Columbia, 1801, would have protected the holder of the negroes, and that Mrs. Fraser stands in the situation of such a third person. I am not inclined to question the cases cited as far as they go, and they arc both cases of judgments, not of mortgages. However I atn disposed to admit that the same principle would govern in cases of mortgages. But an essential ingredient in those cases is, that the person setting up *408 the title by possession should have a hostile possession adverse to the title of the holder of the judgment or mortgage. But no debtor, no mortgagor can set up an adverse possession against Ms creditor or the mortgagee.' It is impossible to consider Mrs. Fraser’s posses-sjon as a(jverse. The purchase was made for her originally and she held under the title of the seller, and her possession however long and complete, was consistent with and not in opposition to the mortgage. It was further objected that the acts of an obligee to an obligor ought not to be permitted to injure a third person such as a surety or others. And it was insisted that the indulgence given in this case to Capt. Campbell was extreme and prejudicial to the complainant, as it has allowed the debt to increase in amount considerably, ad well as put compl’t off her guard, when she might perhaps have made herself whole against Mr. Campbell. I really think that this which is a correct principle has not the smallest application to the case before me. It is in evidence by the receipt given by Williamson’s executors to Mr. Campbell, that the trust was made known to them as early as 1792, if it was not originally; with a knowledge then that the negroes were purchased by Mr. Campbell as agent for Mrs. Fraser, surely every indulgence given was & was intended to be to her ,* for the mortgage could have been enforced at any time. But it was fore, borne in tenderness to her. I think therefore it would be a very hard case on the defendant and those under1 whom he claims to say you have indulged the person really interested in this property, and have foreborne to enforce your mortgage so long, that this very indulgence, instead of being considered a favor, by which the complainant might he enabled to work out the debt, shall be construed into demerit, and a plea of adverse possession founded on it, to exclude the operation of the mortgage and defeat the demand altogether. It would he altogether a surprise on him, as he knowing Campbell had purchased as agent for Mrs. Fraser, could never suppose her possession could he adverse. Some re- *409 fiance seemed to be placed by the counsel on the ground that the lapse of time in this case might raise a presumption of payment, or if a release of the debt or security. But the lapse of time which has occurred is not cient to raise such a presumption. This is a bond debt; the last payment upon it was in March, 1794, and bill was filed in June, 1809. Fifteen years have never been considered a sufficient lapse of time to raise such presumptions against a bond.
I have not introduced much of the law quoted and replied upon by the complainant, because it appeared to me that the cases turned on other points than those in question in this cause. They chiefly went to shew that an agent could not bind his principal beyond his powers on instructions, and to place the responsibility where the credit was given. I think it unnecessary to go into a detailed examination-of them, because I do think the circumstances in this case essentially different from, those cited, and particularly in this great feature, that there is no attempt to make Mrs. Fraser liable, but merely to hold that property subject to the mortgage, which was originally sold, and immediately pledged for the payment,
Upon the whole, after the best consideration I have been able to give this case, I am of opinion that the complainant is not entitled to the relief prayed. I can and do feel for the respectable lady and her children who are interested in this case > but I cannot relieve them. I . hope indeed that they will not suffer, as it has been'stated that Major Fraser acting upon the trust estate for the benefit of the family, is in fact indebted to Captain Campbell on the general balance of accounts. Let this however be as it may, I do not perceive that I can shake the legal lien, which the defendant has on the negroes in question. It is therefore ordered and de*; creed that the injunction be dissolved and the bill dismissed. Henky JDksmt4su»k.
October 15,18U,
*410 The complainants appealed from the decree deliver-gd in this case by His Honor Judge Desaussure on the following grounds :
*'• That David Campbell .purchased the negroes in que'siioii sir his individual capacity, that they were trails-^erl.0(| ay1(] soj| py pim to Mrs. Fraser, her title to them being derived immediately from him, and Were held by her for the space of twelve years and upwards under ’the said title, as an innocent purchaser without notice.
2. That the seller looked to the said David Campbell aloné as the principal in the transaction ,* he signed the bond as principal and mortgaged the negroes as. his own property for the payment, of the purchase money, and Mrs. Fraser was evidently unknown to the seller throughout the whole business.
3. That there was no express notice of this mortgage ever given to Mrk. Fraser, the mortgage being on record not being Sufficient constructive notice, and so admitted by the counsel for the defendant, in opposing the issuing of the inj unction.
4. That admitting David Campbell to have been the agent 'of Mrs. Fraser for the purchase of negroes, and to have purchased negroes in that capacity, yet he was a limited agent, and did not comply with his instructions by paying-for them With Alexander Inglis’s bonds furnished from a part of Mrs. Fraser’s trust estate for that specific purpose* The bill of sale being produced in Court and admitted in evidence* it clearly appeared by a memorandum on the back thereof ih the hand writing of Mr. Campbell, that a bond or' bonds of Mr. Inglis Was assigned td him for the • payment of the said ne-groes ; and it further appeared by & statement of the said bond in the same hand writing that .a much larger sum was received on the bonds than was sufficient to pay for the said negroes. Mr. Campbell in making the purchase departed altogether from his instructions, and instead of applying the bonds of Inglis to the payment, he dealt with the seller as principal,.gave his oWn bond,. *411 purchased in his own name and mortgaged the negroes as his own.
5. That if Mr, Campbell was an agent at the time of the purchase, his agency ceased in 1795, when on arrival of Mrs. Fraser and family from Virginia, he settled his accounts with her and delivered the to her with a declaration that they were fully paid fot and free from any incumbrance whatever; and that upon said settlement of accounts Mr. Campbell owed her a balance of 430Z. after fully paying for the negroes and every other purchase made on her account.
6. That the balance noticed by his honor the Judge in his decree as ultimately due to Mr. Campbell by Mrs. Fraser, was a transaction in the year 1803, long subsequent to the former settlement, when Thomas Fraser bought of him a tract of land, which threw the ba-_ lance in Mr. Campbell’s favor.
7. That the long indulgence and forbearance of the. executors of Williamson, even admitting that Mrs. Fraser could be any way affected by the mortgage, was undoubtedly to her injury, it being evident that had she known of this incumbrance on the negroes, she had various opportunities of indemnifying herself from any loss arising therefrom, as from the subsequent pecuniary transactions between Mr. Campbell, herself and Major Fraser, a sufficient time might have been retained by them to meet this demand, and the not informing Mrs. Fraser of this mortgage must be deemed tantamount to a waiver and abandonment of any claim under the mortgage. From circumstances it may be presumed that nothing is due on a sleeping mortgage or that it is satisfied, more especially when the mortgagee sees the possession of the property transferred and no notice is given or application made to the transferree.
8. That great laches has been exhibited on the part of the executors of Williamson to the great injury of the complainants by not resorting to Mr. Campbell and compelling payment from him ,* and that this Court •does not favo.r those who fay their negligence have in- *412 innocent persons; that justice evidently required, that Mr. Campbell who owéd the debt should have been obliged by legal means to settle it. If . the executors of Williamson had pressed their demand in the year 1792, when the last instalment on the bond became due, Mr. £jarnp[,e]i could have then easily paid it off, as he was, then and long after perfectly solvent, being till the year 3800 or 1801, fully competent to discharge his debts f that such gross laches ought not to be allowed to operate, to the disadvantage of an innocent and bona fide holder' of these negroes ; and that Mrs. Fraser as such is entitled to the benefit of the statute of limitations, having been from 1795 to 1807, in peaceable possession of the said negroes.
9. Because reliance is placed in the decree on the fact of Dr. Clitherall (said to be the trustee of the complainants,) having signed the bond and mortgage, whereas there was no evidence before the Court shewing that he was such trustee, and had such evidence been gone into, it would have been repelled by shewing that Dr. Clitherall was in the practice of endorsing for and signing as security of Mr. Campbell, and did not sign such bond as trustee, but merely as his friend and security, and because that point was not pressed in the argument of the counsel for defendant, and had it been it would have been repelled by shewing that Dr. Clither-all had no authority to bind the property of his cestui que trust by signing said bond and mortgage, and that the executors of Williamson, by conniving at a breach of duty in so doing forfeited all benefit therefrom. It was incumbent on the vendors to inquire whether the trustee had power to execute the mortgage ; there was enough to put them on enquiry, and any deviation from the trust deed would impair the transaction. If Dr. Clitherall, therefore, had no authority under the trust deed to mortgage the negroes, his act is absolutely void, as relates to the cestui que trust.
10. That the receipt of Thomas Itadcliffe, the executor of Williamson, in 1792, does not shew that the ven *413 dors knew of the time of sale in 1790, that David Camp-hell bought as the agent, of the complainants, hut it does shew that the said executor knew in 1792, that the negroes were the trust property of complainants,ser yet notwithstanding such knowledge that he always con-tinned thence forward and until the assignment to defendant, M’Pherson, in 1805, to look altogether to David Campbell as the principal in the purchase.
- 11. That the complainants purchased these negroes pot from the executoi’s of Williamson, but from David Campbell, who had paid for them to the executors of Williamson in 1790, by his bond and security, and who in 1795, delivered them to complainants with an account current, wherein they were charged to complainants, and which constitute a sufficient sale. That in 1795, he did not deal with her as trustee, for the trust, if any, was fulfilled as soon as the negroes were purchased of the executors of Williamson in 1790, but as an individual. He did not purchase them as a trustee, for he paid for them with his own means and on his own responsibility which made Mm the owner. Purchasing them in his own individual capacity he had a right to sell them to the complainants, who are protected by the statute and the adjudged cases.
Smith & BacoI’, compl’ts sol’rs.
The appeal came to a hearing in March 1812. Judges delivered their opinions as follows :
The only question to be taken into consideration in this cáse is whether D. Campbell acted as agent for the trustees to the marriage settlement or not. If he acted as agent, he unquestionably transcended his powers, and his acts must devolve on himself, and cannot hind his principal. He had no general powers given him$ ho was to purchase negroes with the bonds due the trust estate, he was not authorised to depart from that arrangement, and involve the complainant in pecuniary embarrassments, which she never contemplated, and also to create a lien on the property purchased, For *414 although it he true thát in-general and unqualified agen* cies, the right to mortgage is incident to that to purchase ia riot so where the acts to be done are prescribed and defined*,- and particular funds directed to be appropriated for that purpose. Had he pursued his orders strict-jy. he would have purchaséd-no more negroes than to the amount of the bonds, but instead of doing this, he gave’ bis own bond with security for a much larger sum, and a mortgage on the property; B>.ut it is said that JD. Clitherall, the trustee, having signed the bond andMort-gage, is a recognition of the acts of D. Campbell)-and to be sure, had he signed them as trustee, it would have been the case; but does he so ? No ) he signs as security*, as expressly appears upon the face of the bond itself. Had it been intended that the purchase should enure tor the benefit of the complainant, it would have been unnecessary that the agent shouldhave signed it, it being entirely sufficient that the trustee should have done so. It appears therefore from the testimony adduced to the Court, that in the transaction between the ex’rs of Williamson and D. Campbell, he acted in his individual capacity without the privity, or consent of the, complainant or her trustee. In fact there is a circumstance which establishes thispointindependently of the evidence furnished by the bond and mortgage, to wit, in the account current between him and the trust estate. He debits Mrs. Fraser with the purchase, and credits himself for the amount of the bonds. . It is further to be observed that on Mrs. Fraser’s return from Virginia, D, Campbell told her the the negroes were paid for, and freed of all incumbrance whatever, which lulled her into security, and. prevented her making any inquiry relative to the mortgage* and there can exist little doubt* but if she had known of that circumstance, she. would not have taken the bargain off his hands, nor.- recog.-nized Ms conduct in this transaction. ..
The Court is therefore of opinion, that if he acted as agent, he transcended his powers, and if he did not, the complainants had nothing to do with it, and my si be *415 protected under the statute of limitations. It is therefore ordered and decreed, that the decision of the Circuit Court be reversed, and the injunction be made perpetual.. , ,
(Signed) W. Thompson,
Theoboue ¡Gaieraeb,
. -Thomas Waties;
Judge .Thompson informed the bar that Judge James concurred in this decree.
I liavje reconsidered this case, ¡and more particularly that part of it which relates, to the question,, whether David Campbell acted as the agent for the trustee, or cestui que trust in the marriage settlement of Mrs. Fraser. .1. have no doubt from all the facts disclosed in thft ease that he acted as an agent; The bill charges that he did, and that he made the. purchase of .negroes now-in question, as her agent, and he himself has avowed.it, by written declarations attached to or connected .with thedeed relative to the purchase. But it is insisted that if he acted as agent, he transcended his powers by purchasing on credit, and giving his bond and mortgage for the negroes ; whereas by his instructions, he was to purchase negroes with the bonds due- to the trust testate, from which he was not at liberty to depart, and to .involve his principal in: pecuniary epibarrasments, and to create a lien on the-property purchased. Although the instructions spoken of and alleged in the bill* haye never been. produced or proved, ^ I am disposed to admit, that from the, circumstances .of the transaction, the bonds were to form the fund;for the - payment in the purchase of megroes.. .And I. am further . disposed ié Agree that an agent cannot bind ibis, principal personally by any-act'done in derogation.,of bis instructions, And if there .was an attempt in this case to. .make; .the principal personally liable, I should-consider it unwarrantable; .but no such attempt is made. The assignee of the vendor of .the negroes, merely claims the , benefit of. .a mortgage^ofthe- very 'property; sold, which was .morí- *416 gaged back to the vendor e° instanti of tlie sale, to secure ^ie debt. And this I think he is entitled to. would be very mischievious to permit principals to authorise agents to make purchases, with instructions (not disclosed to the vendor) to pay only out of a par-¿jcujar fun(j} an¿ not to mortgage the property purchased, and it would be dangerous to declare such mortgage void on the ground that the agent had exceeded his authority, more especially after the principal had accepted the purchase, which amounted to a confirmation. Nor could this confirmation be said to have been made ignorantly, for the trustee, Mr. Inglis, was privy to the whole transaction, and even assisted in it, and the mortgage itself was on record. With respect to the state of the accounts between the cestui que trust, and her agent Captain Campbell, it does not appear to me that it varies the case. But if it did, there is nothing irt it to produce any effect prejudical to the defendant, because as far as the accounts appear to be settled (in the two first papers) a balance seems to be due to the agent; and as to the third acconunt, which is unsettled, it was admitted at the trial that on the general balance of accounts, Captain Campbell was a creditor, and qualified as that admission has been since the trial, it still is doubtful whether Captain Campbell is indebted to the trust estate, or that to him ; and whilst that doubt remains, I cannot consent to release these negroes from the operation of the mortgage ; for if upon a reference of the accounts it should ultimately appear that the trust estate is indebted to Captain Campbell, then this injustice would follow, that the cestui que trust would have had the full benefit of her funds placed in the hands of her agent, and obtain also the property purchased by him, though that property is not fully paid for.
With respect to any alleged declarations of Captain Campbell to Mrs. Frafcer that the property pnrehased by him on her account was free from incumbrances, I am not aware that there was any proof it on the trial ; or that it .was admitted j aád even if there had been, if
*417 appears to me that tlie principal who employed and trusted, ought to suffer from such misrepresentation, if it really were made, rather than a third person.
Upon the whole of this-case I remain of the same nion that I was on the trial of the cause in the Circuit Court. Henke William Desaüssttre.
March- 20, 1812.
This rase was argued two days by Messrs. Toomek, Lance, W. Loughton Smith and W. Drayton on the part of the appellants.
A.nd by Messrs. Northrop and Pkingie on the' part of the respondents.*

[* The following statement of the evidence was omitted by accident at the proper place, immediately precedingthe decree of the Circuit Court.]
On the tr.al of the cause the complainant produced the bill of sale of Charles Goodwin, igent for Leroy Hammond, executor of A. Williamson, for fourteen negroes, to David .Campbell, .dated 23d March, 1790, purchased for 6f SI. 12s. 3d. On the back of the bill of sale is a memorandum in writing in the following words: “Mem.- — The within groes were purchased by me for Mrs. Fraser, and a bond of Mr. Ingi.s’s assigned to me for the payment of them.” “D. CAMPBELL.”
The negroes named in the bill of sale were Monday, Amos, Grace, 8 . , 1 Cudjo, Betsy, Fanny, Lucy, Patsy, Dennis, Violetf Venus, Eye, Boat-swam and Larry.
At the time of purchasing the negroes Captain Campbell gave his bond of same date with the bill of sale, in which Dr. James Clitherall joined him as security to Leroy Hammond, the then acting executor of A, *418 Williamson’s estate, in the penal sum of 13371. 4s. Sd. conditioned to pay 6781. 12s. 3d. in three equal annual instalments.
T° seoure die payment of the money, Capt. Campbell, and'Dr, Clith-erad joined in a mortgage of the negroes to Léroy Hammond, actihg executor of A. Williamson, bearing the same date with the bill of sale. m°r*£a£e was reo°rded on the lfitht’ebruaiy, 1792.
’Several payments made by Capt.'Campbell are endorsed on the bond, to'wit.
19th July, 1791 150 J, -Os. 0 d.
6th October, 1792 151 13 4
29th Maxell, 1794 297 18 8
Making a total of near 600?.
There was a duplicate loose receipt given by the Mr. Radcliffe, ano. dber executor of A. Williamson, for the second payment. It is in these words :
"** dbarleston, October 6, 1792.' — Received of David Campbell the sum °*" 1->1?. 13s. 4d. on account of a bond given by him and Dr. Clitherall to the executors of General Williamson for negroes purchased for Mrs. x>raSerj a receipt for Which is endorsed on said bond.”
“THt)S- EADCL1PFE, executor to A. Williamson.”
'There is an. assignment on the bond, and also on the mortgage from Mr. Radcliffe as exéfcútor of Andrew Williamsom to J. E. M’Pherson ;for tjíe amoun(. then due on the bond (July 25,1805,) which was stated . . . . v. -v » be 4o5l. iOf.
Mr. Crawford Was eshm'sHed on the part of the complainant. He stat *419 ed that he had known the plantation. of Major Fraser and his negroes since 1798. He knew the negroes which had been levied on under the. mortgage, to-wit, Betsey, Fanny, Dennis, Monday, Boatswain, 'Venus, Violet. Mr. and Mrs. Fraser have been in quiet possession of the neT. groes since the year 1798, and'he believes for s.ome time before. There, has been no claim made upon them to his knowledge. There was, no distinction between them and the other negroes of the estate.
The complainants, offered as testimony several accounts and state, ments in the hand; writing of Captain Campbell, in which .he is said to. account for the trust funds in his hands, and the. application of them to. the purchase of negroes for Mrs. Fraser.
The admission of this species of evidence was objected to, as thq qstra-judicial declaration.of Capt.. Campbell, not on oath, nor in the presence of the.defendarit; that this evidence related to res inter alios acta; thatthis was not the highest evidence, for the accounts and. s tate-ments spoke of Mr. Inglis’s bond and its assignment to Campbell, which,, if admissible at all,, ought t.o be produced. That if the papers offered proved a trust, they would not provea notice of the designation of a particular fund to pay for the negroes. To this it was answered that the object was to shew the title by which tl;e complainant claimed the negroes in question ; to wit, by title derived from Capt. Campbell, in consideration of funds put into his hands, and which had been received by him to invest in negroes, and to shew that hé remained mdehc ed to the trust fund; and that had not Mrs. Fraser been misled into *420 impression that the trust fund had been faithfully applied and the ne-groes paid for, she might have made herself whole by retaining, as she had the power to do several times. Obliged to decide this question hastily, I was oí opinion that these papers were admissible ; with the '■reserve practised in this Court, though impracticable in the Court below asHhetrial of issues before ajury.
lath-not entirely sure that I did right in receiving that testimony; but I incline to think it was admissible, whatever might be its effect on the case. It is however of less importance as I have made up an opinion which would not he changed by the admission or rejection of that testimony; though that testimony certainly strengthens the opinion I have formed.
The evidence so offered and admitted consisted of three papers. The first was a paper in the hand writing of Captain Campbell, which professes to be a statement of Alexander Inglis’s bonds, assigned to him for the payment of negroes purchased on account of Mrs. A. b. Fraser» how and when paid off, and how applied to the purposes of the trust.
This statement relates to two bonds, and shews many payments at various times to a large amount, and the application thereof to the negro purchase, and finally the receipt of the balances due on said bonds. The statements came down to March, 1793, and the balances are then stated as follows : on one bond a balance 1911. with the following words, «Then received in full and credited on purchase, as is every other pay- *421 m'ent.” On tlie other bond a balance of 5211. 14s. Aid. with the following- words,'“Then received ih full arid credited on purchase of negroes, as is every other payment.” ■) to
The second paper is ^.account headed’as;follo\ys: “ Dr. ¡i Mrs. A. L. Fraser, in account with D. Campbell, Cr.” > -The first jtenj on- the debt- or side of the account is of 27th March, lf9S, in these words, “ To balance due on different purchases of negroes to this daté,' 1761 9s. '9(1.” Then follow vairious charges against Mrs.' Fraser, making -am-.'atoohht (including the'.fir&t item,) of 7381. 2s. 3d. ■ ’-Op the other.- side ¡ftere, ar-e credits to Mrs. Fraser for the crop of 1795, and two others items to the amount of 12211. 19s. 9 d. and abalance is struck of 4831. 17s. 6d. in favor'of Mrs. Fráser. Then follow several charges against Mrs. Fraser, to the amount of 5261. and several credits to her to' (including'one of 521. 10s.) the amount of 2261. 4is, '$d. though not added rip in the paper.
A memorandum is made at foot as fóllpwg ; “ Mem- — The above balance is struck at 4831.17s. ‘6d. because the credit for 521. lOs. is given in the mill account, and the other debits and credits are also di^y entered there, as is well Jcnown to Thomas Fraser.” i ,
On the back of this paper there is a.memorandum in iliese words ,; “Mem. for T. Fraser. You are well aware, that this accourt has never, been closed, as the balance of 4831.17s. 6d. was carried to the credit; of the mill concern, and it is obvious you had no right to call, on me fór.jt; the crop of 1795, not being all sold till tlie beginning of the summer o,f 1796, and my adyances in 1795, exceeded thjp 'balarme. J neyer,hacf *422 any other account current of this year, or ever closed one with you finally since the crop of 1794. I must however acknowledge that the debit of 1761 9s. 9d. in the within accounts, was all that was due to me, after giving credit for the bonds I received from the executors of the estate of Thomas L. Smith, and debiting you with all my purchases of negroes on account of your family.” “ D. C.”
The third paper is an account headed, Dr. Thomas Fraser in account with D. Campbell, Cr.” The, debtor side of the account amounts to 3701/. 18 3.7(1-, the creditor side to 4878/. 11s. lid. (including theba: lance due on the crop of 1795, to wit, 483/. 17s. 6d.~) the balance stated to be. due Thomas Fraser, on 1st. January, '1801, is 1176/. 13s. 4d. Then follow a number of charges to diminish that balance, some of them with slims carried out, and many others with no sums filled up; so that file real balance remains unascertained.